UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| XIAO FEI ZHENG, a.k.a. EDDY ZHENG, | ) ) ) | No. C-05-3657 SC |
| Petitioner, | ) ) ) | ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |
| v. | ) ) ) |  |
| MICHAEL CHERTOFF, in his official capacity as SECRETARY OF HOMELAND SECURITY, ALBERTO GONZALES, in his official capacity as ATTORNEY GENERAL, DEPARTMENT OF JUSTICE, NANCY ALCANTAR, in her official capacity as FIELD OFFICE DIRECTOR, San Francisco, California, U.S. BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT, and MARK CHANDLES, in his capacity as CORRECTIONAL CAPTAIN, Yuba county, California, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  |
| Respondents. | ) ) |  |

**United States District Court**
For the Northern District of California

## I.   **INTRODUCTION**

Xiao Fei Zheng, a.k.a. Eddy Zheng ("Petitioner"), has filed a petition for a writ of habeas corpus ("Petition") under 28 U.S.C. § 2241, challenging his detention under § 236(c) of the Immigration and Naturalization Act, codified at 8 U.S.C. § 1226(c) ("Section 1226(c)"), which mandates the detention of certain criminal aliens until the completion of removal proceedings.  The Attorney General has filed a return in opposition to the petition ("Ret.").  Petitioner has filed a traverse in support of his

**United States District Court**
For the Northern District of California

1    petition.

2        The Court, having reviewed the parties' submissions on this

3    matter, DENIES the Petition.

4    **II.**   **BACKGROUND**

5        Petitioner, a native and citizen of China, entered the United

6    States as a lawful permanent resident in November 1982 when he was

7    thirteen.  Petitioner's Points and Authorities in Support of the

8    Petition for a Writ of Habeas Corpus at 3 ("Pet.").  On November

9    10, 1986, in California state court, Petitioner pled guilty to

10    eighteen criminal charges, sustaining an aggravated felony

11    conviction.  Id. at 4.  He was sentenced to life with the

12    possibility of parole for kidnapping to commit robbery and eight

13    years for robbery of an inhabited dwelling.[1]  Id.  Petitioner was

14    released on parole on March 4, 2005, after having served nineteen

15    years in California State custody.  Id.

16        The DHS, as mandated by 8 U.S.C. § 1226(c), took Petitioner,

17    a criminal alien, into custody on March 10, 2005.  Id. at 5.  The

18    following day, the Bureau of Immigration and Customs Enforcement

19    of the DHS issued to Petitioner a Notice to Appear, charging him

20    with being deportable for a violation of 8 U.S.C. § 1227(a)(2)

21    (A)(iii) because he had been convicted of an aggravated felony.

22    Id.

23        At the immigration hearing, Petitioner moved for a change in

24    his custody status, requesting release on bond and contending that

25    retroactive application of Section 1226(c), which Congress enacted

26

27       [1] The sentences on the other counts were stayed.  Pet. at 4.

28           2

ten years after his conviction, was impermissible.  Pet. at 5.
The Immigration Court denied Petitioner's request, declaring that
Petitioner, having been convicted of an aggravated felony, fell
under the authority of Section 1226(c).  Id.  The Board of
Immigration Appeals affirmed the Immigration Court's order without
opinion.  Id.

Petitioner's wife, Susan Smith ("Smith"), in July 2005, filed
with the DHS a Petition for an Alien Relative, seeking a visa on
her spouse's behalf.  Id.  At the hearing, the Immigration Judge
stated that it would take 18-20 months to adjudicate Smith's
petition.  Id.  The Immigration Court has put over Petitioner's
removal proceedings until it has ruled on Smith's petition.  Id.
Petitioner remains in custody with the DHS.  Id. at 6.

In 1986, when Petitioner was convicted, 8 U.S.C. § 1252(a)
(1986) - hereinafter "Section 1252(a)" - allowed the Attorney
General, in his discretion, to arrest and take into custody any
alien pending a determination of deportability.  After taking
custody of such a person, the Attorney General could have, in his
discretion and pending determination of deportability, either
continued to retain the person in custody, released the person on
bond and under certain conditions, or released the person on
conditional parole.  Id.  Any release could be revoked at any
time.  Id.

In 1996, Congress amended this and other immigration
statutes, replacing Section 1252(a) with 8 U.S.C. § 1226.
Currently, the Attorney General has discretion under Section
1226(a) whether to arrest an alien.  In contrast, Section 1226(c),

3

which applies to criminal aliens, removes this discretion. The statute mandates that the Attorney General must take into custody certain criminal aliens, such as Petitioner. <u>Id</u>. Section 1226(c) does not allow the Attorney General to release these aliens on bond or conditional parole. <u>Id</u>.

**III. <u>DISCUSSION</u>**

Petitioner raises two contentions. First, he contends that the application of Section 1226(c) to his case is impermissibly retroactive. Pet. at 5. Second, in the alternative, he contends that mandatory detention for an unreasonable time violates his right to Due Process under the Fifth Amendment.

As stated above, after Petitioner's 2005 release from California state prison, the DHS took Petitioner into custody pursuant to Section 1226(c), which mandates the detention of individuals such as Petitioner. Petitioner now claims that it would be impermissible to apply Section 1226(c) to his case, under the presumption of retroactivity.

The Court finds that it would be a waste of judicial time and resources to grant the Petition and force Petitioner's custodians to exercise their discretion under the law as it stood at the time of Petitioner's convictions. If the Petition were granted, Petitioner's custodians would find their discretion fettered by Section 1226(c) which mandates they retain individuals such as Petitioner.

The Court is fully cognizant of the procedural steps one must take in testing the applicability of retrospective application of the instant statute. However, in the adjudication of the issues

United States District Court
For the Northern District of California

of this case, it appears that the reasonable and logical approach would be to be to broadly construe the statute's applicability in order to prevent a waste of judicial time and resources. Congress's language is bell-clear, broad, and unambiguous:  the statute applies to "any alien" released after the statute's effective date.[2]

The Court will not consider Petitioner's due process contentions, primarily because the length of his detention was extended because his spouse filed a petition on his behalf.  One cannot justifiably oppose a detention whose extension was caused by a delay of one's making.  The solution is clear:  if Smith withdraws her petition, Petitioner's removal hearing will occur earlier.

**IV.**   **CONCLUSION**

For the reasons discussed above, the Court DENIES the Petition.

IT IS SO ORDERED.

Dated:  November 30, 2005

_____
UNITED STATES DISTRICT JUDGE

---

[2] Congress allowed the Attorney General to delay enforcement of § 1226(c) for up to two years if he thought that "there is insufficient detention space and Immigration and Naturalization Service personnel available to carry out section 236(c)."  Pub.L. 104-108, Div. C, Title III, § 303(b), September 30, 1996, 110 Stat. 3009-586, section 2.  After this period of delay, "the provisions of such section 236(c)...shall apply to individuals released after such periods."  Id.  At the latest, the statute would apply to aliens released during or after 1998.  Because Petitioner was released in 2005, the statute applies to him.

United States District Court
For the Northern District of California